## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**GLENN HENDRIX,**
3907 Club Dr.
Atlanta, GA 30319

          **Plaintiff,**

    **v.**

**UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES,**
200 Independence Ave., S.W.
Washington, DC 20201

**CENTERS FOR MEDICARE AND MED-
ICAID SERVICES,**
7500 Security Boulevard
Baltimore, MD 21244

          **Defendants.**

Civil Action No. 15-cv-2103

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff Glenn Hendrix, through his counsel, Arnall Golden Gregory LLP, brings this ac-

tion under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive, declaratory,

and other appropriate relief, and seeks the disclosure and release of agency records improperly

withheld from Plaintiff by the United States Department of Health and Human Services'

("HHS") Office of the Inspector General ("OIG") and the Centers for Medicare and Medicaid

Services ("CMS") in response to seven FOIA requests submitted on April 3, 2015. Plaintiff seeks

an Order from this Court (1) finding that HHS OIG and CMS have violated their duties under

FOIA; (2) requiring HHS OIG and CMS to promptly produce all records responsive to Plaintiff's

FOIA requests; (3) enjoining HHS OIG and CMS from assessing any fees associated with HHS

OIG and CMS's response to Plaintiff's FOIA requests; and (4) awarding Plaintiff his attorneys'
fees and costs associated with this action.

## I.      INTRODUCTION

1.      In December 2010, the HHS OIG issued a report, *Questionable Billing by Skilled
Nursing Facilities*, OEI-02-09-00202 (Dec. 22, 2010) (available at
http://oig.hhs.gov/oei/reports/oei-02-09-00202.pdf). The stated objectives of the underlying
study were: (1) "[t]o determine the extent to which billing by skilled nursing facilities (SNF)
changed from 2006 to 2008;" (2) "[t]o determine the extent to which billing varied by type of
SNF ownership in 2008;" and (3) "[t]o identify SNFs that had questionable billing in 2008." *Id.*,
at Executive Summary, p. i. The OIG's reported conclusions from the study were that: (1)
"[f]rom 2006 to 2008, SNFs increasingly billed for higher paying RUGs, even though benefi-
ciary characteristics remained largely unchanged;" (2) "[f]or-Profit SNFs were far more likely
than nonprofit or government SNFs to bill for higher paying RUGs [(i.e. "Resource Utilization
Groups," or reimbursement categories)];" and (3) "[a] number of SNFs had questionable billing
in 2008." *Id.*, at Executive Summary, p. ii. Based on these findings, the OIG recommended that
CMS (1) "[m]onitor overall payments to SNFs and adjust rates, if necessary;" (2) "[c]hange the
current method for determining how much therapy is needed to ensure appropriate payments;"
(3) "[s]trengthen monitoring of SNFs that are billing for higher paying RUGs;" and (4) "[f]ollow
up on the SNFs identified as having questionable billing." *Id.*, at Executive Summary, pp. iii-iv.

2.      In November 2012, the OIG issued a second report, *Inappropriate Payments To
Skilled Nursing Facilities Cost Medicare More Than A Billion Dollars In 2009*, OEI-02-09-
00200 (Nov. 9, 2012) (available at http://oig.hhs.gov/oei/reports/oei-02-09-00200.pdf). This re-
port was "based . . . on a medical record review of a stratified random sample of SNF claims

from 2009," and concluded that "SNFs billed one-quarter of all claims in error in 2009, resulting in $1.5 billion in inappropriate Medicare payments." *Id.*, at Executive Summary, p. 2.

3.      Since the publication of these reports, the OIG, in conjunction with the United States Department of Justice, has opened multiple investigations of therapy services providers and skilled nursing facilities, and numerous lawsuits and *qui tams* have been filed against the owners, operators, and service providers of long-term care facilities and SNFs.

4.      On January 24, 2013, the United States District Court for the District of Vermont approved a settlement agreement in the case of *Jimmo v. Sebelius*, No. 5:11-CV-17 (D. Vt. 2013). The case, which was brought by the Center for Medicare Advocacy ("CMA"), challenged Medicare contractors' alleged application of an "Improvement Standard," under which claims would be denied if the patient failed to improve as a result of the therapy services provided – even if those services were needed in order to prevent or slow a decline in the patient's condition. The settlement agreement required CMS to: (1) revise its program manuals to clarify that coverage for therapy services does not turn on "the presence or absence of a beneficiary's potential for improvement," but "on the beneficiary's need for skilled care;" (2) conduct an educational campaign for contractors, adjudicators, providers, and suppliers, etc. concerning the policy clarification; and (3) engage in accountability measures, including reviewing claims decisions to ensure they were made in accordance with the principals in the settlement agreement. (*See Jimmo v. Sebelius* CMS Fact Sheet, attached hereto as **Exhibit A** (*available at* https://www.cms.gov/medicare/medicare-fee-for-service-payment/SNFPPS/downloads/jimmo-factsheet.pdf)).

5.      Subsequently, on May 1, 2014, CMS published the Proposed FY 2015 SNF Prospective Payment Systems ("PPS") Rule, along with a report entitled "Observations on Therapy

Utilization Trends." This report noted an increase in the percentage of service days in the highest reimbursement category while other categories declined or remained steady, and found that the amount of therapy that was provided was often "just enough to surpass the relevant therapy threshold" for a given reimbursement category. *Id.*, 1-2. The report is available online at https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/SNFPPS/Downloads/Therapy_Trends_Memo_04212014.pdf. The Rule, which was issued as a final rule on July 31, 2014, was published in the Federal Register on August 5, 2014, at 79 FR 45628.

6.      On April 3, 2015, Plaintiff, an attorney who often represents the owners or operators of SNFs and/or companies that provide services to SNFs, submitted seven FOIA requests seeking information regarding the foregoing reports and the *Jimmo* settlement: four to the HHS OIG and three to CMS. OIG denied two of the requests in full and referred the other two requests to CMS. CMS failed to provide any substantive response whatsoever to any of the five Requests that were submitted or referred to it.

7.      On June 23, 2015, Plaintiff timely appealed OIG's denials of the two FOIA requests to HHS but has received no response whatsoever since the date of its filing.

## II.      JURISDICTION AND VENUE

8.      This Court has jurisdiction over both the subject matter of this dispute and the parties pursuant to 5 U.S.C. § 552(a)(4)(B). This Court also has jurisdiction over the parties pursuant to 28 U.S.C. § 1331.

9.      Venue lies in the United States District Court for the District of Columbia pursuant to 5 U.S.C. § 552(a)(4)(B).

### III.    THE PARTIES

10.    Plaintiff is a natural person residing in Atlanta, Georgia.

11.    Defendant HHS is a Department of the Executive Branch of the United States Government and an agency within the meaning of 5 U.S.C. § 552(f). The headquarters of HHS is at 200 Independence Ave., S.W., Washington, DC 20201. The OIG is a division within HHS, and is located at 330 Independence Ave., S.W., Washington, DC 20201.

12.    Defendant CMS is an agency within HHS and is also an agency within the meaning of 5 U.S.C. § 552(f). CMS is responsible for overseeing the Medicare and Medicaid programs. The headquarters of CMS is at 7500 Security Blvd., Baltimore, MD 21244.

### IV.    LEGAL BACKGROUND

13.    FOIA provides that "each agency, upon any request for records [that] (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

14.    FOIA further provides that "[e]ach agency, upon any request for records . . . shall determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor, and the right of such person to appeal to the head of the agency any adverse determination[.]" 5 U.S.C. § 552(a)(6)(A)(i).

15.    FOIA further provides that "[t]he 20-day period under clause (i) shall commence on the date on which the request is first received by the appropriate component of the agency, but in any event not later than ten days after the request is first received by any component of the

agency that is designated in the agency's regulations under this section to receive requests under this section." 5 U.S.C. § 552 (a)(6)(A).

16.     If an agency fails to comply with the time limits set by FOIA in responding to a FOIA request, the "agency shall not assess search fees (or . . . duplication fees), if no unusual or exceptional circumstances . . . apply to the processing of the request." 5 U.S.C. § 552(a)(4)(A)(viii).

17.     FOIA requires the agency to produce all information responsive to a request unless the information qualifies for one of the nine enumerated exemptions under FOIA. *See* 5 U.S.C. § 552(b)(1)-(9). However, FOIA and the case law clearly provide that "the burden is on the agency to sustain its action" to withhold records pursuant to a FOIA exemption. 5 U.S.C. § 552(a)(4)(B); *see Department of State v. Ray*, 502 U.S. 165, 173 (1991) (it is the agency's burden "to justify the withholding of any requested documents").

18.     If an agency determines that a responsive record contains information that is exempt from mandatory disclosure under one of the enumerated FOIA exemptions, FOIA further requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt" and that "[i]f technically feasible, the amount of the information deleted, and the exemption under which the deletion is made, shall be indicated at the place in the record where such deletion is made." 5 U.S.C. § 552(b).

19.     If an agency withholds documents or portions of documents pursuant to an enumerated FOIA exception, the agency is required to provide an index of the documents and portions of the documents that the Agency has withheld, together with a description "sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under

FOIA." *Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979); *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

20.     FOIA further provides that "[a]ny person making a request to any agency for records . . . shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph." 5 U.S.C. § 552 (a)(6)(C)(i).

21.     HHS's own implementing regulations acknowledge that "FOIA sets certain time limits for [HHS agencies] to decide whether to disclose the records . . . requested, and to decide appeals. If [HHS] fail[s] to meet the deadlines, [the requester] may proceed as if [HHS] had denied [the] request or [the] appeal." 45 C.F.R. § 5.35(a).

22.     HHS regulations specify that all HHS component agencies and divisions "will decide whether to release records within 10 working days after [an information] request reaches the appropriate FOI office[.]" 45 C.F.R. § 5.35(b)(1).

23.     HHS's regulations further provide that its component agencies and divisions "will decide an appeal within 20 working days after the appeal reaches the appropriate review official." 45 C.F.R. § 5.35(b)(2).

24.     However, HHS's regulations permit "FOI Officers o[r] review officials may extend the time limits in unusual circumstances. Extension at the request stage may total up to 10 working days. [HHS] will notify [the requester] in writing of any extension." 45 C.F.R. § 5.35(c).

## V.     REQUESTS ONE, TWO, AND THREE - CMS

25.     On April 3, 2015, Plaintiff submitted three separate FOIA requests to CMS. The first request sought all documentation and information relating to the OIG report, *Questionable*

*Billing by Skilled Nursing Facilities*, OEI-02-09-00202, described in paragraph 1 above, ("Request One," attached hereto as **Exhibit B**). The request set forth seven categories of specific information sought by the Plaintiff. Plaintiff authorized CMS to incur up to $5,000 in costs before requiring further approval. *Id.* at 3.

26.     The second FOIA request submitted by Plaintiff to CMS on April 3, 2015 ("Request Two," attached hereto as **Exhibit C**) sought all documentation and information relating to the OIG report entitled *Inappropriate Payments To Skilled Nursing Facilities Cost Medicare More Than A Billion Dollars In 2009*, OEI-02-09-00200, described in paragraph 2 above. The request set forth the same seven categories of specific information sought in Request One. Again, Plaintiff authorized CMS to incur up to $5,000 in costs before requiring further approval. *Id.* at 3.

27.     The third FOIA request submitted by Plaintiff to CMS on April 3, 2015 ("Request Three," attached hereto as **Exhibit D**) sought all documentation and information related to the CMS report "Observations on Therapy Utilization Trends," described in paragraph 5 above. The request set forth four categories of specific information sought by the Plaintiff. Again, Plaintiff authorized CMS to incur up to $5,000 in costs before requiring further approval. *Id.* at 3.

28.     According to the Federal Express tracking receipts retained by Plaintiff, Requests One, Two, and Three were received by CMS on April 6, 2015. CMS's FOIA status webpage confirms that these requests were received by CMS on April 6, 2015.

29.     Approximately four days after Requests One, Two, and Three were received by CMS, Plaintiff received two form letters, each dated April 6, 2015, acknowledging CMS's receipt of two of the Requests.

30.     The first letter instructed Plaintiff to refer to "Control Number 040620157014 and PIN DJ39." ("Acknowledgment Letter One," attached hereto as **Exhibit E**). A subsequent search

of CMS's website using the control number and PIN supplied in Acknowledgement Letter One revealed that Acknowledgement Letter One pertained to Request One.

31.     The second letter instructed Plaintiff to refer to "Control Number 040620157012 and PIN H76Z" and "Inappropriate Payments to Skilled Nursing Facilities Cost Medicare More Than A Billion Dollars in 2009, OEI-02-09-00200, November 2012 (OIG Report)." ("Acknowledgment Letter Two," attached hereto as **Exhibit F**). A subsequent search of CMS's website using the control number and PIN supplied in Acknowledgement Letter One confirmed that Acknowledgement Letter Two pertained to Request Two.

32.     Plaintiff did not receive an acknowledgement letter or any other form of acknowledgment of receipt from CMS with respect to Request Three. However, when the undersigned's office contacted CMS's Freedom of Information Group on November 6, 2015, CMS provided the confirmation number 040620157007 and PIN 4JN3 associated with Request Three. A subsequent search of CMS's website using the control number and PIN supplied by CMS confirmed that these numbers pertained to Request Three.

33.     After April 10, 2015, Plaintiff received no further communications whatsoever with respect to Requests One, Two, or Three.

34.     CMS's FOIA status website describes the same status for all three requests: "FOIA request referred to program office(s) for responsive records search and fee estimate." (Website printouts, attached hereto as **Exhibits G**, **H**, and **I**, respectively). The same projected date of response is given for all three requests: "Undetermined." *Id.* However, the CMS FOIA status websites for Requests One and Two erroneously list July 27, 2015 as the "Date of Response." **Exhibits G and H**, respectively. The "Date of Response" for Request Three is currently given as "No data is available at this time." **Exhibit I**.

35.     CMS never notified Plaintiff that it required an extension up to the maximum of ten additional working days due to "unusual circumstances." *See* 45 C.F.R. § 5.35(c).

36.     Accordingly, CMS's deadline under the HHS regulations for responding to Requests One, Two, and Three expired on or about April 20, 2015. 45 C.F.R. § 5.35(a).

37.     CMS's response deadline of 20 days under FOIA expired on or about May 4, 2015. 5 U.S.C. § 552(a)(6)(A)(i). CMS never notified Plaintiff that "unusual circumstances" existed to justify the extension of the 20-day response deadline by ten working days. 5 U.S.C. § 552(a)(6)(B)(i).

38.     CMS has failed to provide any substantive response to any of the requests submitted by Plaintiff on April 3, 2015.

39.     CMS's failure to comply with FOIA's mandatory deadlines constitutes an exhaustion of Plaintiff's administrative remedies. *See* 5 U.S.C. § 552(a)(6)(C)(i).

40.     CMS's failure to provide any substantive response to Plaintiff's FOIA requests constitutes a "constructive denial" under 45 C.F.R. § 5.35(a), and Plaintiff has exhausted his administrative remedies.

41.     Accordingly, CMS's failure to respond within the timeframes mandated by FOIA and HHS's own regulations, failure to provide any substantive response to Requests One, Two, and Three, and constructive denial of Plaintiff's requests all were in violation of FOIA and the regulations.

## VI.     REQUESTS FOUR AND FIVE – HHS OIG

42.     On April 3, 2015, Plaintiff submitted four FOIA requests to the HHS OIG, including "Request Four" and "Request Five," which are discussed herein.[1] Request Four sought all

---

[1] Plaintiff's two other requests submitted that day, Request Six and Request Seven, are discussed, *infra*, at sections

documentation and information relating to the OIG report, *Questionable Billing by Skilled Nursing Facilities*, OEI-02-09-00202, described in paragraph 1, above (Request Four, attached hereto as **Exhibit J**). The request set forth eight categories of specific information sought by the Plaintiff. *Id.* at 1-2. The request also stated that Plaintiff was willing to pay the reasonable costs of locating and reproducing the requested documents. *Id.* at 3. Plaintiff specifically requested that, for any documents that HHS OIG determined were partially exempted from release, HHS OIG provide all non-exempt portions that were reasonably severable. *Id.*

43.     Request Five sought all documentation and information related to the OIG report entitled *Inappropriate Payments To Skilled Nursing Facilities Cost Medicare More Than A Billion Dollars In 2009*, OEI-02-09-00200, described in paragraph 2, above ("Request Five," attached hereto as **Exhibit K**). The request set forth twelve general categories of specific information sought by the Plaintiff. The request also stated that Plaintiff was willing to pay the reasonable costs of locating and reproducing the requested documents. *Id.* at 2. Plaintiff specifically requested that, for any documents that HHS OIG determined were partially exempted from release, HHS OIG provide all non-exempt portions that are reasonably severable. *Id.*

44.     According to the Federal Express tracking receipts retained by Plaintiff, Requests Four and Five were received by HHS OIG on April 6, 2015.

45.     Approximately seven days after Requests Four and Five were received by HHS OIG, Plaintiff received two form email communications from Robin R. Brooks, Director, Freedom of Information, each dated April 13, 2015, acknowledging HHS OIG's receipt of Requests Four and Five.

46.     The first email communication, which related to Request Four, provided Control Number OIG-15-0594-KS and acknowledged receipt as of April 6, 2015 ("Acknowledgment

VIII and IX respectively.

Letter Three," attached hereto as **Exhibit L**).

47.     The second email communication, which related to Request Five, provided Control Number OIG-15-0591-KS and acknowledged receipt as of April 6, 2015 ("Acknowledgment Letter Four," attached hereto as **Exhibit M**).

48.     HHS OIG never notified Plaintiff that it required an extension up to the maximum of ten additional working days due to "unusual circumstances." *See* 45 C.F.R. § 5.35(c).

49.     Accordingly, HHS OIG's deadline under the HHS regulations for responding to Requests Four and Five expired on or about April 20, 2015. 45 C.F.R. § 5.35(a).

50.     HHS OIG's response deadline of 20 days under FOIA expired on or about May 4, 2015. 5 U.S.C. § 552(a)(6)(A)(i). HHS OIG never notified Plaintiff that "unusual circumstances" existed to justify the extension of the 20-day response deadline by ten working days. 5 U.S.C. § 552(a)(6)(B)(i).

51.     On May 21, 2015, Plaintiff received two form emails from Sandra Servin-Solis, OIG FOIA Specialist.

52.     In the first email, which related to Request Four, Ms. Servin-Solis stated: "This is an interim response[.] . . . We have queried the Office of Evaluation and Inspections whom we believe may have responsive records to your request. That office is conducting a search and we intend to provide all releasable records upon completion of that search. We will contact you within 60 days from the date of this letter to provide you with the status of your request if the records are not received by then." ("Interim Response to Request Four," attached hereto as **Exhibit N**).

53.     The second email, which related to Request Five, was identical to the email described in paragraph 48, except that it was identified as an interim response to Request Five.

("Interim Response to Request Five," attached hereto as **Exhibit O**).

54.     On or about May 29, 2015, Plaintiff received a letter from HHS OIG denying Requests Four and Five in full (the "Denial Letter," attached hereto as **Exhibit P**). The letter stated, in relevant part, that:

> This office has been informed that there is an open and ongoing investigation concerning the subjects of your request. Therefore, I am denying the requested records under FOIA Exemption (b)(7)(A).
>
> Exemption (b)(7)(A) permits the withholding of investigatory records compiled for law enforcement purposes when disclosure could reasonably be expected to interfere with enforcement proceedings.

**Exhibit P**. The letter denying the requests did not include an index of documents withheld pursuant to Exemption (b)(7)(A), as required by case law; nor did it include non-exempt portions of documents or information, as required by FOIA and as had been specifically requested by Plaintiff in Requests Four and Five. 5 U.S.C. § 552(b); **Exhibit P**; Exhibit **J** at 3; **Exhibit K** at 2.

55.     FOIA provides that:

> 1. Whenever a request is made which involves access to records described in subsection (b)(7)(a) and –
>
> > A. The investigation or proceeding involves a possible violation of criminal law; and
> >
> > B. There is reason to believe that (i) the subject of the investigation or proceeding is not aware of its pendency, and (ii) disclosure of the existence of the records could reasonably be expected to interfere with enforcement proceedings, the agency may, *during only such time as that circumstance continues*, treat the records as not subject to the requirements of this section.

5 U.S.C. § 552(c)(1)(A)-(B) (emphasis added). HHS OIG did not state in the Denial Letter that "disclosure could reasonably be expected to interfere with" the "open and ongoing investigation concerning the subjects of [Plaintiff's] request" or that the investigation was criminal in nature.

*Id.*; **Exhibit P**.

56.     The Denial Letter also informed Plaintiff that he was permitted to appeal that determination within thirty days, and gave instructions for filing the appeal, including the address and official to whom the appeal should be addressed. **Exhibit P**.

57.     HHS OIG's Denial Letter constituted a complete and final denial and substantive response to Requests Four and Five.

58.     HHS OIG's failure to respond within the timeframes mandated by FOIA and HHS's own regulations, improper denial of Requests Four and Five, and failure to produce non-exempt portions of withheld documents and an index listing the withheld documents all were in violation of FOIA and the regulations.

## VII.    APPEAL OF HHS OIG'S DENIAL OF REQUESTS FOUR AND FIVE

59.     On June 23, 2015, Plaintiff mailed his appeal of HHS OIG's denials of Requests Four and Five to the address provided in the Denial Letter (*see* **Exhibit P**): Director, News Division, Office of the Assistant Secretary for Public Affairs, Freedom of Information/Privacy Acts Division, U.S. Department of Health and Human Services, United States Department of Health and Human Services, 330 C St., S.W. Room 1221, Washington, DC 20201 (the "Appeal," attached hereto as **Exhibit Q**).

60.     In the Appeal, Plaintiff objected to HHS OIG's denial of Requests Four and Five under FOIA, and noted that "it appears that the Agency has acted arbitrarily and capriciously by improperly denying the disclosure of documents sought in those requests" because "[t]he OIG reports are historical in nature and investigated the SNF industry as a whole, rather than targeting one entity or person for an enforcement action" and thus the documents sought were not subject to Exemption (b)(7)(A). **Exhibit Q** at 1-6.

61.     Plaintiff also noted that time was of the essence and explicitly reserved his right

"under FOIA to seek judicial review, including the award of attorney's fees." **Exhibit Q** at 6.

62.     According to the Federal Express tracking receipts retained by Plaintiff, Requests Four and Five were received by HHS on June 24, 2015 at 12:32 p.m.

63.     HHS's deadline for responding to Plaintiff's Appeal expired on or around July 22, 2015.

64.     Plaintiff has not received any further communication from HHS concerning Requests Four or Five or Plaintiff's appeal.

65.     HHS's failure to comply with FOIA's mandatory deadlines constitutes an exhaustion of Plaintiff's administrative remedies. *See* 5 U.S.C. § 552(a)(6)(C)(i).

66.     HHS's failure to provide any substantive response to Plaintiff's FOIA appeal constitutes a "constructive denial" under 45 C.F.R. § 5.35(a), and Plaintiff has exhausted his administrative remedies.

67.     Accordingly, HHS's failure to respond to Plaintiff's Appeal within the timeframes mandated by FOIA and HHS's own regulations, failure to provide any substantive response to Plaintiff's Appeal, and constructive denial of Plaintiff's requests all were in violation of FOIA and the regulations.

## VIII.   REQUEST SIX – HHS OIG AND CMS

68.     Also on April 3, 2015, Plaintiff submitted two additional FOIA requests to HHS OIG. The first of these, Request Six, sought all documentation and information *related to the OIG's role and involvement in the CMS report "Observations on Therapy Utilization Trends,"* discussed in paragraph 5, above ("Request Six," attached hereto as **Exhibit R**). The request also stated that Plaintiff was willing to pay the reasonable costs of locating and reproducing the requested documents. *Id.* at 2. Plaintiff specifically requested that, for any documents that HHS

OIG determined were partially exempted from release, HHS OIG provide all non-exempt portions that are reasonably severable. *Id.*

69.     According to the Federal Express tracking receipt retained by Plaintiff, Request Six was received by HHS OIG on April 6, 2015.

70.     Approximately twenty-five days after Request Six was received by HHS OIG, Plaintiff received an email from Ms. Servin-Solis related to Request Six, dated May 1, 2015, stating that:

> The records you seek are not maintained within the OIG. We believe the Centers for Medicare and Medicaid Services (CMS) may have the records you seek. We have taken the liberty of referring your FOIA request to CMS for processing and direct response to you.

**Exhibit S**.

71.     Plaintiff did not ever receive any communications of any kind from CMS regarding Request Six. When the undersigned's office contacted CMS's Freedom of Information Office regarding Request Six on November 6, 2015, CMS stated that Request Six had been closed as duplicative to Request Three.

72.     Request Three was not duplicative of Request Six, as the two requests sought substantially different information regarding the same report from different agencies. *Compare* **Exhibit D** *with* **Exhibit R**.

73.     Request Six sought information related to, *inter alia*, the HHS OIG's involvement in the preparation of the report discussed in paragraph 5, *supra*. **Exhibit R**. HHS OIG could not have conducted an adequate search for responsive records in light of its determination that the aforementioned records sought by Plaintiff in Request Six "are not maintained within the OIG."

74.     On November 17, 2015, when the undersigned's office again contacted CMS's Freedom of Information Office regarding Request Six, CMS provided the control number

040620157007 and PIN number 4JN3, which are the same numbers provided for Request Three. *See* **Exhibit I**.

75.     Neither CMS nor HHS OIG ever notified Plaintiff that either agency required an extension up to the maximum of ten additional working days due to "unusual circumstances." *See* 45 C.F.R. § 5.35(c).

76.     Accordingly, HHS OIG's deadline under the HHS regulations for responding to Request Six expired on or about April 20, 2015. 45 C.F.R. § 5.35(a). CMS's deadline under the HHS regulations for responding to Request Six expired on or about May 15, 2015. *Id.* 5 U.S.C. § 552(a)(6)(A).

77.     HHS OIG's response deadline of 20 days under FOIA expired on or about May 4, 2015. 5 U.S.C. § 552(a)(6)(A)(i). HHS OIG never notified Plaintiff that "unusual circumstances" existed to justify the extension of the 20-day response deadline by ten working days. 5 U.S.C. § 552(a)(6)(B)(i).

78.     As noted above, HHS OIG referred Request Six to CMS on or about May 1, 2015, more than ten days after HHS OIG received Request Six. Accordingly, as discussed in para-graphs 14-15, *supra*, CMS had a total of thirty days to respond to Request 6 from the date HHS OIG received Request Six: ten days for the Request to be referred by HHS OIG under 5 U.S.C. § 552(a)(6)(A), and twenty days to respond pursuant to 5 U.S.C. § 552(a)(6)(A)(i) (together, the "referral response deadline").

79.     Notwithstanding the foregoing, CMS did not respond to Request Six within ei-ther the foregoing thirty-day referral response deadline or the general twenty-day response dead-line for a new FOIA request under FOIA. 5 U.S.C. § 552(a)(6)(A). CMS never notified Plaintiff that "unusual circumstances" existed to justify the extension of the response deadline by ten

working days. 5 U.S.C. § 552(a)(6)(B)(i).

80.     HHS OIG and CMS have failed to provide any substantive response to Request Six.

81.     HHS OIG and CMS's failure to comply with FOIA's mandatory deadlines constitutes an exhaustion of Plaintiff's administrative remedies. *See* 5 U.S.C. § 552(a)(6)(C)(i).

82.     CMS's failure to provide any substantive response to Plaintiff's FOIA requests constitutes a "constructive denial" under 45 C.F.R. § 5.35(a), and Plaintiff has exhausted his administrative remedies.

83.     Accordingly, HHS OIG's failure to conduct an adequate search for responsive records; HHS OIG and CMS's failures to respond to Request Six within the time frames mandated by FOIA and HHS's own regulations; HHS OIG and CMS's failures to respond any substantive response to Request Six; and HHS OIG and CMS's constructive denials of Request Six all were in violation of FOIA and the regulations.

## IX.     REQUEST SEVEN – HHS OIG AND CMS

84.     On April 3, 2015, Plaintiff also submitted another, separate FOIA request to the HHS OIG. Request Seven sought all documentation and information relating to HHS's implementation of the settlement reached in *Jimmo v. Sebelius*, discussed in paragraph 4, above. ("Request Seven," attached hereto as **Exhibit T**). The request set forth four categories of specific information sought by the Plaintiff, all of which were specifically tailored to seek documentation or information in HHS OIG's possession. *Id.*, at 1-2. The request also stated that Plaintiff was willing to pay the reasonable costs of locating and reproducing the requested documents. *Id.* at 2. Plaintiff specifically requested that, for any documents that HHS OIG determined were partially exempted from release, that HHS OIG provide all non-exempt portions that are reasonably sev-

erable. *Id.*

85.     According to the Federal Express tracking receipts retained by Plaintiff, Request

Seven was received by HHS OIG on April 6, 2015.

86.     Approximately seven days after Request Seven was received by HHS OIG, on

April 13, 2015, Plaintiff received an email communication from Ms. Servin-Solis, referencing

Control Number 2015-0592 related to Request Seven, stating that:

> The records you seek are not maintained within the OIG. We believe the
> Centers for Medicare and Medicaid Services (CMS) may have the records
> you seek. We have taken the liberty of referring your FOIA request to
> CMS for processing and direct response to you.

**Exhibit U**.

87.     Request Seven sought information related to, *inter alia*, whether HHS OIG recon-

sidered any of its reports and findings preceding the settlement in *Jimmo* in light of the settle-

ment, whether HHS OIG has implemented the settlement, and whether OIG has issued any in-

structions, guidance, and training related to the settlement to anyone affiliated with OIG, and

whether OIG has conducted any testing or analysis to assess whether claims are being evaluated

in accordance with the *Jimmo* settlement. **Exhibit T**. HHS OIG could not have conducted an ad-

equate search for responsive records in light of its determination that the aforementioned records

sought by Plaintiff in Request Seven "are not maintained within the OIG." **Exhibit U**.

88.     According to CMS's FOIA status webpage, Request Seven was received by CMS

on April 16, 2015 ("Request Seven FOIA Status Webpage," attached hereto as **Exhibit V**).

89.     After the referral, Plaintiff did not receive any communications of any kind from

CMS regarding Request Seven. When the undersigned's office contacted CMS's Freedom of In-

formation Office regarding Request Seven on November 6, 2015, CMS provided control number

041620150710 and PIN number HM63. A subsequent search of CMS's website using the control

number and PIN supplied by CMS confirmed that these numbers pertained to Request Seven. *Id.*

90.     CMS's FOIA status website provides the following status for Request Seven: "FOIA request referred to program office(s) for responsive records search and fee estimate." *Id.* The projected date of response is the same as that given for Requests One, Two, and Three: "Undetermined." *Id.* The "Date of Response" for Request Seven is currently given as "No data is available at this time." *Id.*

91.     Neither HHS OIG nor CMS ever notified Plaintiff that either agency required an extension up to the maximum of ten additional working days due to "unusual circumstances." *See* 45 C.F.R. § 5.35(c).

92.     Accordingly, HHS OIG's deadline under the HHS regulations for responding to Request Seven expired on or about April 20, 2015, and CMS's deadline under the HHS regulations for responding to Request Seven expired on or about May 1, 2015. 45 C.F.R. § 5.35(a).

93.     HHS OIG's response deadline of 20 days under FOIA expired on or about May 4, 2015. 5 U.S.C. § 552(a)(6)(A)(i). HHS OIG never notified Plaintiff that "unusual circumstances" existed to justify the extension of the 20-day response deadline by ten working days. 5 U.S.C. § 552(a)(6)(B)(i).

94.     As discussed in paragraphs 14-15, *supra*, CMS's response deadline of 20 days after its receipt of Request Seven under FOIA expired on or about May 14, 2015. 5 U.S.C. § 552(a)(6)(A)(i). CMS never notified Plaintiff that "unusual circumstances" existed to justify the extension of the response deadline by ten working days. 5 U.S.C. § 552(a)(6)(B)(i).

95.     HHS OIG and CMS have failed to provide any substantive response to Request Seven.

96.     HHS OIG and CMS's failure to comply with FOIA's mandatory deadlines consti-

tutes an exhaustion of Plaintiff's administrative remedies. *See* 5 U.S.C. § 552(a)(6)(C)(i).

97.     HHS OIG and CMS's failure to provide any substantive response to Request Seven constitutes a "constructive denial" under 45 C.F.R. § 5.35(a), and Plaintiff has exhausted his administrative remedies.

98.     Accordingly, HHS OIG's failure to conduct an adequate search for responsive records, HHS OIG and CMS's failures to respond to Request Seven within the timeframes mandated by FOIA and HHS's own regulations, HHS OIG and CMS's failures to respond any substantive response to Request Seven, and HHS OIG and CMS's constructive denials of Request Seven all were in violation of FOIA and the regulations.

## X.     PLAINTIFF'S CLAIMS FOR RELIEF

### COUNT I
**(Violation of FOIA against CMS for Requests One, Two, and Three, 5 U.S.C. § 552)**

99.     Plaintiff re-alleges Paragraphs 1-98 as if fully stated herein.

100.     Defendant CMS has unlawfully ignored and failed to respond to Plaintiff's FOIA Requests One, Two, and Three, thereby constructively denying those requests.

101.     Defendant CMS has failed to comply with the time limits for processing and responding to Plaintiff's FOIA Requests One, Two, and Three, has provided no substantive response to Requests One, Two, and Three, and has therefore unlawfully withheld public information and records responsive thereto.

102.     Defendant CMS has not identified the records it withholds; nor has it identified and established applicable FOIA exemptions or produced reasonably segregable portions of documents.

103.     Plaintiff has exhausted his administrative remedies with respect to FOIA Requests One, Two, and Three.

104.    Defendant CMS's failure to comply with the FOIA time limits prohibits it from assessing search fees associated with Requests One, Two, and Three.

105.    Plaintiff is being irreparably harmed by Defendant CMS unlawfully withholding the requested records, and Plaintiff will continue to be irreparably harmed unless Defendant is compelled to conform its conduct to the requirements of law.

### COUNT 2
**(Violation of FOIA against HHS for Requests Four and Five, 5 U.S.C. § 552)**

106.    Plaintiff re-alleges Paragraphs 1-98 as if fully stated herein.

107.    Through HHS OIG, Defendant HHS has unlawfully denied Plaintiff's FOIA Requests Four and Five.

108.    Through HHS OIG, Defendant HHS has failed to comply with the time limits for processing and responding to Plaintiff's FOIA Requests Four and Five, thus constructively denying these requests.

109.    The broad and categorical assertion of the FOIA exemption set forth at 5 U.S.C. § 552(b)(7)(A) by Defendant HHS's division, HHS OIG, does not meet the requirements of FOIA and is an unlawful response under the statute.

110.    Through HHS OIG, Defendant HHS has not identified the records it withholds; nor has it produced reasonably segregable portions of documents.

111.    Defendant HHS has unlawfully ignored and failed to respond to Plaintiff's Appeal of the improper denial of Requests Four and Five and failed to comply with the time limits for processing and resolving Plaintiff's Appeal.

112.    Plaintiff has exhausted his administrative remedies with respect to Requests Four and Five.

113.    Defendant HHS's failure to comply with the FOIA time limits prohibits it from assessing search fees associated with Requests Four and Five.

114.    Plaintiff is being irreparably harmed by Defendant HHS's unlawful withholding of the requested records and by Defendant HHS's failing to respond to its Appeal of that unlawful withholding, and Plaintiff will continue to be irreparably harmed unless Defendant is compelled to conform its conduct to the requirements of law.

**COUNT 3**
**(Violation of FOIA against HHS and CMS regarding Request Six – 5 U.S.C. § 552)**

115.    Plaintiff re-alleges Paragraphs 1-98 as if fully stated herein.

116.    Through HHS OIG, Defendant HHS has failed to comply with the time limits for processing and responding to Request Six, thus constructively denying that request, and failed to conduct an adequate search for responsive records before referring Request Six to CMS.

117.    Defendant CMS has unlawfully ignored and failed to respond to Request Six upon its referral from HHS OIG, thereby constructively denying Request Six.

118.    Defendant CMS has failed to comply with the time limits for processing and responding to Plaintiff's FOIA Request Six, failed to provide any substantive response to Request Six, and is therefore unlawfully withholding public information and records responsive thereto.

119.    Defendants CMS and HHS OIG have not identified the records they withhold; nor have they identified and established applicable FOIA exemptions or produced reasonably segregable portions of documents.

120.    Plaintiff has exhausted his administrative remedies with respect to FOIA Request Six.

121.    Defendants CMS and HHS's failures to comply with the FOIA time limits prohib-

its them from assessing any search fees associated with Request Six.

122.    Plaintiff is being irreparably harmed by Defendants HHS OIG and CMS unlawfully withholding the requested records, and Plaintiff will continue to be irreparably harmed unless Defendants are compelled to conform their conduct to the requirements of law.

## COUNT 4
### (Violation of FOIA against HHS and CMS regarding Request Seven – 5 U.S.C. § 552)

123.    Plaintiff re-alleges Paragraphs 1-98 as if fully stated herein.

124.    Through HHS OIG, Defendant HHS has failed to conduct an adequate search for responsive records before referring Request Seven to CMS, failed to comply with the time limits for processing and responding to Request Seven, thus constructively denying that request, and is therefore unlawfully withholding public information and records responsive thereto.

125.    Defendant CMS has unlawfully ignored and failed to respond to Request Seven upon its referral from HHS OIG, thereby constructively denying Request Seven.

126.    Defendant CMS has failed to comply with the time limits for processing and responding to Plaintiff's FOIA Request Seven, and is unlawfully withholding public information and records responsive thereto.

127.    Defendants CMS and HHS OIG have not identified the records they withhold; nor have they identified and established applicable FOIA exemptions or produced reasonably segregable portions of documents.

128.    Plaintiff has exhausted his administrative remedies with respect to FOIA Request Seven.

129.    Defendants CMS and HHS OIG's failures to comply with the FOIA time limits prohibits them from assessing any search fees associated with Request Seven.

130.    Plaintiff is being irreparably harmed by Defendants HHS OIG and CMS unlaw-

fully withholding the requested records, and Plaintiff will continue to be irreparably harmed unless Defendants are compelled to conform their conduct to the requirements of law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

a) Declare that Defendants' withholding of records and failure to respond to Plaintiff's seven FOIA Requests was unlawful, arbitrary, and capricious.

b) Order Defendant CMS to immediately perform a thorough search for records responsive to Requests One, Two, Three, Six, and Seven.

c) Order Defendant HHS and HHS OIG to immediately perform a thorough search for records responsive to Requests Four, Five, Six, and Seven.

d) Order Defendant CMS to produce to Plaintiff all records responsive to Requests One, Two, Three, Six, and Seven.

e) Order Defendant HHS and HHS OIG to produce to Plaintiff all records responsive to Requests Four, Five, Six, and Seven.

f) To the extent either Defendant determines one or more responsive records contain information that is exempt from disclosure under FOIA, order that Defendant provide Plaintiff with an index describing in detail any records or portions thereof being withheld, along with the specific basis for withholding associated with each such record or portion thereof.

g) To the extent that Defendant determines that a reasonably segregable portion of any document is exempt from disclosure under FOIA, order Defendant to produce the non-exempt portions of any such document.

h) Order Defendants to waive all search, review, reproduction, and any other related fees

and costs associated with its response to Plaintiff's Requests.

i)   Award to Plaintiff attorneys' fees and litigation costs pursuant to 5 U.S.C. § 552(a)(4)(E).

j)   Award any further relief the Court deems just and proper.


Respectfully submitted this 3rd day of December 2015,


By: /s/ *Eric D. Olson*
Sara M. Lord (MA Bar No. 546918)
(motion for *pro hac vice* admission to be submitted)
Eric D. Olson (DC Bar No. 1004365)
ARNALL GOLDEN GREGORY LLP
1775 Pennsylvania Ave., NW
Suite 1000
Washington, DC 20006
Telephone:   202.677.4054
Facsimile:   202.677.4055

*Attorneys for Plaintiff Glenn Hendrix*